**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **United States of America** | : |
| | : |
| v. | : Case No. 06cr142 (JBA) |
| | : |
| **Richard Fogel** | : |

### RULING ON METROPOLITAN'S MOTION FOR RESTITUTION
### & AMENDED MOTION FOR RESTITUTION [DOCS. ## 31, 50]

Movant/victim Metropolitan Property and Casualty Insurance Company ("Metropolitan") has moved this Court for a restitution award of $181,882.61 to compensate it for its losses in this health care fraud case. See Mot. for Rest. [Doc. # 31]; Am. Mot. for Rest. [Doc. # 50] (adjusting amount claimed). This figure allegedly represents the full amount of Metropolitan's losses, including all first-party payments made directly to defendant Fogel, as well as all third-party payments to persons whom Fogel was treating, and also including Metropolitan's investigative attorneys fees and costs. As Metropolitan's counsel and counsel for the Government acknowledged at the hearing held on July 2, 2007, however, this amount assumes a 100% fraud rate,[1] which is most likely inaccurate, and also includes fees and costs

---

[1] Although Metropolitan's adjusted restitution amount includes only those third-party payments made on claims in which Attorney Corrigan was involved, see Met. Suppl. Mem. [Doc. # 49] at 2, this figure nonetheless assumes a 100% fraud rate with respect to those claims.

1

associated with investigating Attorney Corrigan, as well as Fogel himself.[2] Additionally, restitution in this amount in favor of Metropolitan would result in a proportionately greater recovery for Metropolitan than for the other insurance companies who also suffered losses as a result of Fogel's fraud. These issues will be addressed infra.

I.  **Insurance Payments**

The Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, is applicable to this case, as the crime involved – health care fraud – is undisputably "an offense against property," an "offense committed by fraud or deceit," and one "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." Id. § 3663A(c). Accordingly, the Act requires that "the Court shall order . . . that the defendant make restitution to the victim[s] of the offense." Id. § 3663A(a)(1); accord U.S.S.G. § 5E1.1 ("In the case of an identifiable victim, the court shall--(1) enter a restitution order for the full amount of the victim's loss."). As all of the insurance companies listed in the Government's proposed restitution schedule have suffered losses attributable to Fogel's offense

---

[2] Metropolitan argues that "the amount of time spent on assistance with the investigation of Attorney Bruce Corrigan should not be deducted from the restitution award, because it is directly related to the defendant's scheme to defraud Metropolitan." Met. Suppl. Mem. at 3.

2

conduct, they are all entitled to restitution under the Act.[3]

As the parties explained at the July 2 hearing, it may be difficult, time consuming, and/or costly to determine with specificity the exact amount of losses actually caused to each insurance company by defendant's offense conduct, but, as Allstate Insurance Company/Allstate Indemnity Company (collectively, "Allstate"), who have instituted a civil action against Fogel, have utilized a methodology for quantifying actual loss, it is clearly not impossible. Metropolitan has not attempted to make any such demonstration, but rather seeks the entirety of monies paid on claims where Fogel was the treating chiropractor and Corrigan was the attorney of record as its loss amount. By contrast, the Government's proposed allocation reflects only the amount of payments made directly to Fogel, but not to third parties who were treated by Fogel, as a way to estimate actual loss. As noted above, Metropolitan's proposed restitution amount assumes a 100% fraud rate, which is likely inaccurate, whereas counsel for the Government represented at the July 2 hearing that, on the basis of interviews with former staff

---

[3] Although Metropolitan is the only insurance company mentioned by name in the Information to which Fogel pled guilty, the Information also refers to claims based on false records submitted to "other health care benefit programs" and lawsuits against "other health care benefit programs" (¶ 5). Moreover, "[a] sentencing court is authorized to provide restitution to 'any' victim of the offense, even those not named in the criminal indictment." United States v. Grundhoefer, 916 F.2d 788, 793-94 (2d Cir. 1990).

3

of Fogel (Drs. Vilaire and Papadopoulos) and Fogel himself concerning the frequency of fraud, and looking at the gross dollars billed and received by Fogel's chiropractic practice, its restitution methodology reasonably approximates the actual "fraud rate" applicable to Fogel's interactions with the insurance company victims.[4] Moreover, as Allstate recognizes in its Response Brief filed at the Court's request [Doc. # 48], awarding restitution to Metropolitan for <u>all</u> payments made that were related to Fogel and Corrigan (<u>i.e.</u>, direct payments <u>and</u> third-party payments), but awarding restitution to the balance of the victims for only those payments made directly to Fogel, would result in a disproportionate restitution award.

Accordingly, appreciating the MVRA's presumption in favor of full compensation to victims, but also taking into account principles of fairness and proportionality in recompense, the Court finds the Government's methodology for computing restitution to be reasonable and to result in the provision of restitution to the victims as fully and proportionately as possible without burdening the Court with an unduly complex restitution proceeding which would overwhelm the sentencing

---

[4] While the Court agrees with Metropolitan that the Court is not limited to imposing restitution within the $1.1 million amount stipulated between defendant and the Government, <u>see</u> Met. Suppl. Mem. at 8, the Court is simply not convinced that Metropolitan's proposed restitution amount has been shown to represent its actual losses caused by Fogel's offense conduct.

proceeding.[5]

## II. Investigative Costs

The Court must also consider Metropolitan's request for attorneys fees and costs associated with its assistance to the Government in its investigation of this health care fraud scheme. The MVRA provides that "[t]he order of restitution shall require that such defendant . . . reimburse the victim for lost income and necessary child care, transportation, and other expenses

---

[5] Both Section 3663A and Section 3663 authorize the Court to decline to order restitution if the issues are too complex and if they would overwhelm the sentencing proceeding. See 18 U.S.C. § 3663A(c)(3)(B); id. § 3663(a)(1)(B)(ii). These provisions thus "call for a weighing of the burden of adjudicating the restitution issue against the desirability of immediate restitution – or otherwise stated, a weighing of the burden that would be imposed on the court by adjudicating restitution in the criminal case against the burden that would be imposed on the victim by leaving him or her to other available legal remedies." United States v. Kones, 77 F.3d 66, 69 (3d Cir. 1996). This is not a case where "liability is clear . . . and all the sentencing court has to do is calculate damages." Id.; United States v. Eisen, cr-90-18, 1991 WL 180403, at *1 (E.D.N.Y. Sept. 3, 1991) ("Congress intended restitution to be tied to the loss caused by the offense of conviction. . . . Under ordinary concepts of causation, a victim cannot be compensated for moneys which it would have parted with in any event."). For those damages (if any) that the victims feel they have not recouped in this proceeding, they may avail themselves of any civil remedy available. Cf. United States v. C.R. Bard, Inc., 848 F. Supp. 287, 292-93 (D. Mass. 1994) ("It would be very time-consuming and complicated to litigate in this criminal case [the issue of proximate causation]. Much more importantly, at the end of that process, the court could only award victims compensation for their medical expenses and lost earnings. The court could not award damages for pain and suffering or punitive damages, which may be available in civil suits. Accordingly, individual civil suits are a much more appropriate means of addressing restitution. . . .").

5

incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." § 3363A(b)(4). Thus, those attorneys fees and costs that are attributable to defendant's offense conduct should be the subject of the Court's restitution order. See United States v. Gordon, 393 F.3d 1044, 1057 (9th Cir. 2004) ("Generally, investigation costs – including attorneys' fees – incurred by private parties as a direct and foreseeable result of the defendant's conduct may be recoverable.").

Metropolitan argues that the fees and costs associated with "assistance with the investigation of Attorney Bruce Corrigan should not be deducted from the restitution award, because it is directly related to the defendant's scheme to defraud Metropolitan." Met. Suppl. Mem. at 3 (emphasis in original). Although "[r]estitution is available only for the loss caused by the specific conduct that is the basis of the conviction," see Grundhoefer, 916 F.2d at 794, "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution," 18 U.S.C. § 3664(h). Moreover, in keeping with the rationale stated in United States v. Gordon, supra, Metropolitan's investigative costs and fees associated with the fraudulent scheme as a whole (including Fogel's conduct and that of Attorney Corrigan) were a foreseeable result of

6

defendant's fraudulent conduct.  Thus where, as here, Metropolitan's fees and costs are associated with the investigation of the fraudulent scheme as a whole, Metropolitan is apparently unable to parse out which fees/costs are attributable to investigation of each individual separately, in light of the MVRA's intention that "uncertainties [be] resolved with a view toward achieving fairness to the victim," see Gordon, 393 F.3d at 1048, and Metropolitan having documented time spent on investigating the Fogel/Corrigan matter to substantiate the fees claimed, the Court will award Metropolitan such claimed fees and costs, amounting to a total award of $17,685.61.[6]

**III. Conclusion**

Thus, the Court GRANTS Metropolitan's Motions [Docs. # 31, 50] in part, and DENIES them in part, and will order restitution as detailed in the Government's restitution schedule providing for recovery by the victims of their direct payments to defendant Fogel, plus recovery by Metropolitan of fees and costs, which fees and costs total $17,685.61.  The Court sees no logic or basis in the MVRA for reducing the victims' direct-payments pro rata recovery to accommodate the Court's award of fees/costs to Metropolitan, and thus each victim's share shall not be so

---

[6] This amount includes compensation for cost incurred reflecting the depreciation of a 1999 Honda Civic used by the undercover investigative officer in the amount of $5,515, as well as the fees associated with Metropolitan's special investigation unit and outside counsel.

7

reduced as the Government proposes. Accordingly, each victim will receive the full amount of its direct payments to Fogel, as detailed in the Government's first proposed schedule, see [Doc. # 48, Ex. 1], as follows:

| Company | Restitution Amount |
|---|---|
| Allstate | $ 233,995.00 |
| Progressive | $ 145,978.00 |
| Geico | $ 104,299.00 |
| Nationwide | $ 80,157.00 |
| Hartford | $ 65,816.00 |
| AIG | $ 51,881.00 |
| St. Paul/Travelers | $ 51,403.00 |
| Liberty | $ 36,921.00 |
| Metropolitan | $ 21,197.00 + $ 17,685.61 = $ 38,882.61 |
| CAN | $ 15,049.00 |
| Amica | $ 7,970.00 |
| USAA | $ 2,729.00 |
| Safeco | $ 2,007.00 |
| Healthnet | $ 83,174.00 |
| BCBS | $ 64,129.00 |
| Aetna | $ 63,463.00 |
| Connecticare | $ 61,727.00 |
| **TOTAL** | $ 1,109,580.61 |

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 10th day of July, 2007.**